# EXHIBIT D.1

Case 3:23-cv-00345-S   Document 1-4   Filed 02/14/23   Page 2 of 19   PageID 18

FILED
2/9/2023 4:46 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Cheryl Watts DEPUTY

<span style="color:red">4 CIT/ ESERVE
JURY DEMAND</span>

CAUSE NO. DC-23-01964

| | | |
|---|---|---|
| ANTHONY YANNONE, Individually, and as Administrator of the Estate of Tyler Yannone, and as Executor of the Estates of Neisha Zahn and Daniel Yannone,<br>  Plaintiffs,<br><br>VS.<br><br>AVIALL, INC., DALLAS AIRMOTIVE, INC., STANDARDAERO BUSINESS AVIATION SERVICES, LLC, ROLLS-ROYCE CORP., JOHN DOE CORPORATIONS 1 THROUGH 5,<br>  Defendants. | § § § § § § § § § § § § § § § § § | IN THE ____ 192nd JUDICIAL<br><br><br><br><br><br>DISTRICT COURT OF<br><br><br><br><br><br><br>DALLAS COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW Anthony Yannone, Individually, and as Administrator of the Estate of Tyler Yannone, and as Executor of the Estates of Neisha Zahn and Daniel Yannone, Plaintiffs, and makes and files this Original Petition and complains of Aviall, Inc., Dallas Airmotive, Inc., StandardAero Business Aviation Services, LLC, Rolls-Royce Corp., and John Doe Corporations 1 through 5, Defendants, and for cause of action shows:

### DISCOVERY CONTROL PLAN

1. Pursuant to TEX. R. CIV. P. 190.4, Plaintiff intends to conduct discovery under Discovery Level 3.

### PARTIES AND SERVICE

2. Plaintiff Anthony Yannone is a private individual who resides in Ohio and may be served with process through the undersigned counsel.

3. Plaintiff Anthony Yannone as Administrator of the Estate of Tyler Yannone represents The Estate of Tyler Yannone, decedent, who was an adult individual and resident of the US Virgin

Islands at the time of his death.

4. Plaintiff Anthony Yannone as Executor of the Estate of Neisha Zahn represents The Estate of Neisha Zahn, decedent, who was an adult individual and resident of the US Virgin Islands at the time of her death.

5. Plaintiff Anthony Yannone as Executor of the Estate of Daniel Yannon represents The Estate of Daniel Yannone, decedent, who was an adult individual and resident of the US Virgin Islands at the time of his death.

6. Defendant Aviall, Inc. ("Defendant Aviall") is a foreign corporation incorporated in the state of Delaware, authorized to do business in the state of Texas, with its principle place of business located at 2750 Regent Blvd., Dallas, Texas 75261. Aviall may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, located at 211 E. 7th St., Ste. 620, Austin, Texas 78701. *Issuance of citation is requested at this time.*

7. Defendant Dallas Airmotive, Inc. ("Defendant Airmotive") is a domestic corporation incorporated in the state of Texas, authorized to do business in the state of Texas, with its principle place of business located at 11490 Mosteller Rd., Cincinnati, OH 45241. Airmotive may be served through its registered agent, C T Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201. *Issuance of citation is requested at this time.*

8. Defendant StandardAero Business Aviation Services, LLC. ("Defendant StandardAero") is a foreign limited liability company incorporated in the state of Delaware, authorized to do business in the state of Texas, with its principle place of business located at 5710 N. Scottsdale Rd., Ste. 250, Scottsdale, Arizona 85253. StandardAero may be served through its registered agent, C T Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

*Issuance of citation is requested at this time.*

9. Defendant Rolls-Royce, Corp. ("Defendant Rolls Royce") is a foreign corporation incorporated in the state of Delaware, with its principle place of business located at 1900 Reston Metro Plaza, Suite 400, Reston, VA 20190. Rolls Royce may be served through its registered agent, Corporation Service Company, located at 251 Little Falls Dr., Wilmington, Delaware 19808. *Issuance of citation is requested at this time.*

10. Defendants John Doe Corporations 1-5 are unknown at this time, but believed to be distributors, manufacturers, installers, resellers, and/or maintainers of the faulty engine and/or components.

## JURISDICTION AND VENUE

11. This court has jurisdiction and venue is proper in Dallas County, Texas in that one of the defendants is a resident of Texas and multiple defendants have principle places of business located in Dallas County, Texas and the damages are within the jurisdictional limits of the Court.

## FACTS

12. On February 15, 2021, the Decedents chartered a sightseeing flight in a Bell 206B-III helicopter (tail number N13AT) to scout out potential real estate from Caribbean Buzz LLC.

13. The flight took off about 3:14 Atlantic Standard time and was planned to be a 17-minute flight around the island.

14. The flight flew out over the ocean, then made a 180-degree turn back toward the St. Thomas Island while losing elevation.

15. The engine of the Bell 206B-III suffered a catastrophic engine failure and crashed into wooded terrain on St. Thomas Island.

16. The Bell 206B-III and its occupants were consumed by fire. The pilot, Maria Isabel Rodriguez-Van Heurck, and the three Decedents died in the crash.

17. Based on information and belief, Defendant Rolls-Royce manufactured the Rolls-Royce Allison 250-C30P engine which failed during the flight of the Bell 206B-III and Defendant Aviall supplied the stage 2-3 compressor wheel bearing part number 23057112.

18. Based on information and belief, Defendants Airmotive and/or StandardAero installed the stage 2-3 compressor wheel bearing part number 23057112.

19. Defendants John Doe 1-5 are unknown at this time, but believed to be designers, distributors, manufacturers, installers, resellers, and/or maintainers of the faulty engine and/or components.

## COUNT I: NEGLIGENCE OF AVIALL

20. Defendant Aviall had a duty to use reasonable care in the construction of the engine as well as its components that were incorporated into the Bell 206B-III helicopter as part of the power plant for all foreseeable uses.

21. Defendant Aviall breached the aforementioned duties to use reasonable care and were negligent, careless, and reckless for reasons including, but not limited to, the following acts and/or omissions:

    a. By failing to properly supervise the assembly and maintenance of the aircraft engine in question as well as its component parts;

    b. By failing to ensure that safe and proper materials were incorporated into the aircraft engine and its component parts;

    c. By failing to specify, require, and provide components that are safe and proper for the assembly of the engine in question;

  d. By failing to ensure that safe and proper materials were incorporated into the aircraft engine's assembly;

  e. By failing to inspect and/or test the materials use in assembly of the aircraft engine;

  f. By failing to ensure the safe and proper design of the aircraft engine in question;

  g. By failing to properly complete repairs on the aircraft engine;

  h. By failing to properly inspect the aircraft engine; and,

  i. By other negligence, reckless, and careless acts and/or omissions as yet discovered and defined.

22. The injuries suffered by the Decedents and their ultimate deaths were the direct and proximate result of the negligent acts or omissions of Defendant Aviall as set forth above.

## COUNT II: NEGLIGENCE OF AIRMOTIVE

23. Defendant Airmotive had a duty to use reasonable care in the construction of the engine as well as its components that were incorporated into the Bell 206B-III helicopter as part of the power plant for all foreseeable uses.

24. Defendant Airmotive breached the aforementioned duties to use reasonable care and were negligent, careless, and reckless for reasons including, but not limited to, the following acts and/or omissions:

  a. By failing to properly supervise the assembly and maintenance of the aircraft engine in question as well as its component parts;

  b. By failing to ensure that safe and proper materials were incorporated into the aircraft engine and its component parts;

  c. By failing to specify, require, and provide components that are safe and proper for the assembly of the engine in question;

    d. By failing to ensure that safe and proper materials were incorporated into the aircraft engine's assembly;

    e. By failing to inspect and/or test the materials use in assembly of the aircraft engine;

    f. By failing to ensure the safe and proper design of the aircraft engine in question;

    g. By failing to properly complete repairs on the aircraft engine;

    h. By failing to properly inspect the aircraft engine; and,

    i. By other negligence, reckless, and careless acts and/or omissions as yet discovered and defined.

25. The injuries suffered by the Decedents and their ultimate deaths were the direct and proximate result of the negligent acts or omissions of Defendant Airmotive as set forth above.

## COUNT II: NEGLIGENCE OF STANDARDAERO

26. Defendant StandardAero had a duty to use reasonable care in the construction of the engine as well as its components that were incorporated into the Bell 206B-III helicopter as part of the power plant for all foreseeable uses.

27. Defendant StandardAero breached the aforementioned duties to use reasonable care and were negligent, careless, and reckless for reasons including, but not limited to, the following acts and/or omissions:

    a. By failing to properly supervise the assembly and maintenance of the aircraft engine in question as well as its component parts;

    b. By failing to ensure that safe and proper materials were incorporated into the aircraft engine and its component parts;

    c. By failing to specify, require, and provide components that are safe and proper for the assembly of the engine in question;

    d. By failing to ensure that safe and proper materials were incorporated into the aircraft engine's assembly;

    e. By failing to inspect and/or test the materials use in assembly of the aircraft engine;

    f. By failing to ensure the safe and proper design of the aircraft engine in question;

    g. By failing to properly complete repairs on the aircraft engine;

    h. By failing to properly inspect the aircraft engine; and,

    i. By other negligence, reckless, and careless acts and/or omissions as yet discovered and defined.

28. The injuries suffered by the Decedents and their ultimate deaths were the direct and proximate result of the negligent acts or omissions of Defendant StandardAero as set forth above.

## COUNT III: NEGLIGENCE OF ROLLS-ROYCE

29. Defendant Rolls Royce had a duty to use reasonable care in the construction of the engine as well as its components that were incorporated into the Bell 206B-III helicopter as part of the power plant for all foreseeable uses.

30. Defendant Rolls Royce breached the aforementioned duties to use reasonable care and were negligent, careless, and reckless for reasons including, but not limited to, the following acts and/or omissions:

    a. By failing to properly supervise the assembly and maintenance of the aircraft engine in question as well as its component parts;

    b. By failing to ensure that safe and proper materials were incorporated into the aircraft engine and its component parts;

    c. By failing to specify, require, and provide components that are safe and proper for the assembly of the engine in question;

d. By failing to ensure that safe and proper materials were incorporated into the aircraft engine's assembly;

e. By failing to inspect and/or test the materials use in assembly of the aircraft engine;

f. By failing to ensure the safe and proper design of the aircraft engine in question;

g. By failing to properly complete repairs on the aircraft engine;

h. By failing to properly inspect the aircraft engine; and,

i. By other negligence, reckless, and careless acts and/or omissions as yet discovered and defined.

31. The injuries suffered by the Decedents and their ultimate deaths were the direct and proximate result of the negligent acts or omissions of Defendant Rolls Royce as set forth above.

## COUNT IV: NEGLIGENCE OF JOHN DOE CORPORATIONS 1-5

32. Defendants John Doe Corporations 1-5 had a duty to use reasonable care in the construction of the engine as well as its components that were incorporated into the Bell 206B-III helicopter as part of the power plant for all foreseeable uses.

33. Defendants John Doe Corporations 1-5 breached the aforementioned duties to use reasonable care and were negligent, careless, and reckless for reasons including, but not limited to, the following acts and/or omissions:

a. By failing to properly supervise the assembly and maintenance of the aircraft engine in question as well as its component parts;

b. By failing to ensure that safe and proper materials were incorporated into the aircraft engine and its component parts;

c. By failing to specify, require, and provide components that are safe and proper for the assembly of the engine in question;

   d. By failing to ensure that safe and proper materials were incorporated into the aircraft engine's assembly;

   e. By failing to inspect and/or test the materials use in assembly of the aircraft engine;

   f. By failing to ensure the safe and proper design of the aircraft engine in question;

   g. By failing to properly complete repairs on the aircraft engine;

   h. By failing to properly inspect the aircraft engine; and,

   i. By other negligence, reckless, and careless acts and/or omissions as yet discovered and defined.

34. The injuries suffered by the Decedents and their ultimate deaths were the direct and proximate result of the negligent acts or omissions of Defendants John Doe Corporations 1-5 as set forth above.

## COUNT V - STRICT LIABILITY OF AVIALL

35. Upon information and belief, the aircraft engine and some of its components that caused Decedents' injuries and death was designed and manufactured by Defendant Aviall.

36. Upon information and belief, the engine of the Bell 206B-III built and designed by Defendant Aviall was manufactured in a defective condition such that it was unreasonably dangerous to the user. More specifically, the aircraft engine had an unreasonably dangerous defect for the following reasons:

   a. An ordinary person purchasing the aircraft engine would not have expected it to present the danger of a sudden loss of flying capability mid-flight;

   b. The danger presented by the design of the aircraft engine outweighs its utility;

   c. A reasonably person aware of the danger this aircraft engine posed to both people and property would not have placed it into the stream of commerce.

37. The engine was in a defective condition when it was designed, manufactured, marketed, and sold by Aviall for ultimate use by the Decedents. The same condition of the aircraft engine existed and remain unchanged until February 15, 2021.

38. The result of the acts and omissions above, the engine was a factual and proximate cause of the injury and eventual deaths of the Decedents.

39. Defendant Aviall is strictly liable for all injuries and damages caused by the aircraft's defective condition.

## COUNT VI - STRICT LIABILITY OF AIRMOTIVE

40. Upon information and belief, the aircraft engine and some of its components that caused Decedents' injuries and death was designed and manufactured by Defendant Airmotive.

41. Upon information and belief, the engine of the Bell 206B-III built and designed by Defendant Airmotive was manufactured in a defective condition such that it was unreasonably dangerous to the user. More specifically, the aircraft engine had an unreasonably dangerous defect for the following reasons:

    a. An ordinary person purchasing the aircraft engine would not have expected it to present the danger of a sudden loss of flying capability mid-flight;

    b. The danger presented by the design of the aircraft engine outweighs its utility;

    c. A reasonably person aware of the danger this aircraft engine posed to both people and property would not have placed it into the stream of commerce.

42. The engine was in a defective condition when it was designed, manufactured, marketed, and sold by Airmotive for ultimate use by the Decedents. The same condition of the aircraft engine existed and remain unchanged until February 15, 2021.

43. The result of the acts and omissions above, the engine was a factual and proximate cause of the injury and eventual deaths of the Decedents.

44. Defendant Airmotive is strictly liable for all injuries and damages caused by the aircraft's defective condition.

### COUNT VI - STRICT LIABILITY OF STANDARDAERO

45. Upon information and belief, the aircraft engine and some of its components that caused Decedents' injuries and death was designed and manufactured by Defendant StandardAero.

46. Upon information and belief, the engine of the Bell 206B-III built and designed by Defendant StandardAero was manufactured in a defective condition such that it was unreasonably dangerous to the user. More specifically, the aircraft engine had an unreasonably dangerous defect for the following reasons:

    a. An ordinary person purchasing the aircraft engine would not have expected it to present the danger of a sudden loss of flying capability mid-flight;

    b. The danger presented by the design of the aircraft engine outweighs its utility;

    c. A reasonably person aware of the danger this aircraft engine posed to both people and property would not have placed it into the stream of commerce.

47. The engine was in a defective condition when it was designed, manufactured, marketed, and sold by StandardAero for ultimate use by the Decedents. The same condition of the aircraft engine existed and remain unchanged until February 15, 2021.

48. The result of the acts and omissions above, the engine was a factual and proximate cause of the injury and eventual deaths of the Decedents.

49. Defendant StandardAero is strictly liable for all injuries and damages caused by the aircraft's defective condition.

## COUNT VII - STRICT LIABILITY OF ROLLS ROYCE

50. Upon information and belief, the aircraft engine and some of its components that caused Decedents' injuries and death was designed and manufactured by Defendant Rolls Royce.

51. Upon information and belief, the engine of the Bell 206B-III built and designed by Defendant Rolls Royce was manufactured in a defective condition such that it was unreasonably dangerous to the user. More specifically, the aircraft engine had an unreasonably dangerous defect for the following reasons:

    a. An ordinary person purchasing the aircraft engine would not have expected it to present the danger of a sudden loss of flying capability mid-flight;

    b. The danger presented by the design of the aircraft engine outweighs its utility;

    c. A reasonably person aware of the danger this aircraft engine posed to both people and property would not have placed it into the stream of commerce.

52. The engine was in a defective condition when it was designed, manufactured, marketed, and sold by Rolls Royce for ultimate use by the Decedents. The same condition of the aircraft engine existed and remain unchanged until February 15, 2021.

53. The result of the acts and omissions above, the engine was a factual and proximate cause of the injury and eventual deaths of the Decedents.

54. Defendant Rolls Royce is strictly liable for all injuries and damages caused by the aircraft's defective condition.

## COUNT VIII - STRICT LIABILITY OF JOHN DOE CORPORATIONSS 1-5

55. Upon information and belief, the aircraft engine and some of its components that caused Decedents' injuries and death was designed and manufactured by Defendants John Doe Corporations 1-5.

56. Upon information and belief, the engine of the Bell 206B-III built and designed by Defendants John Doe Corporations 1-5 was manufactured in a defective condition such that it was unreasonably dangerous to the user. More specifically, the aircraft engine had an unreasonably dangerous defect for the following reasons:

    a. An ordinary person purchasing the aircraft engine would not have expected it to present the danger of a sudden loss of flying capability mid-flight;

    b. The danger presented by the design of the aircraft engine outweighs its utility;

    c. A reasonably person aware of the danger this aircraft engine posed to both people and property would not have placed it into the stream of commerce.

57. The engine was in a defective condition when it was designed, manufactured, marketed, and sold by Rolls Royce for ultimate use by the Decedents. The same condition of the aircraft engine existed and remain unchanged until February 15, 2021.

58. The result of the acts and omissions above, the engine was a factual and proximate cause of the injury and eventual deaths of the Decedents.

59. Defendants John Doe Corporations 1-5 are strictly liable for all injuries and damages caused by the aircraft's defective condition.

## COUNT IX- BREACH OF WARRANTY - AVIALL

60. The engine manufactured by Aviall is subject to an express warranty and/or implied warranty of merchantability, under which any goods sold by Defendant must be fit for the ordinary purposes for which such goods are used.

61. Defendant Aviall expected that its aircraft engine would be utilized by individuals such as pilot Maria Isabel Rodriguez-Van Heurck in the same or similar manner in which Maria Isabel Rodriguez-Van Heurck was using it at the time of the crash.

62. The aircraft engine was defective by design and/or manufacture, as demonstrated by its sudden loss of flying capability mid-flight. This defect rendered the aircraft engine unreasonably dangerous and therefore unfit for the ordinary purpose for which it is designed.

63. As such, Defendant Aviall breached an express warranty and/or implied warranty of merchantability.

## COUNT X- BREACH OF WARRANTY - AIRMOTIVE

64. The engine manufactured by Airmotive is subject to an express warranty and/or implied warranty of merchantability, under which any goods sold by Defendant must be fit for the ordinary purposes for which such goods are used.

65. Defendant Airmotive expected that its aircraft engine would be utilized by individuals such as pilot Maria Isabel Rodriguez-Van Heurck in the same or similar manner in which Maria Isabel Rodriguez-Van Heurck was using it at the time of the crash.

66. The aircraft engine was defective by design and/or manufacture, as demonstrated by its sudden loss of flying capability mid-flight. This defect rendered the aircraft engine unreasonably dangerous and therefore unfit for the ordinary purpose for which it is designed.

67. As such, Defendant Airmotive breached an express warranty and/or implied warranty of merchantability.

## COUNT X- BREACH OF WARRANTY - STANDARDAERO

68. The engine manufactured by StandardAero is subject to an express warranty and/or implied warranty of merchantability, under which any goods sold by Defendant must be fit for the ordinary purposes for which such goods are used.

69. Defendant StandardAero expected that its aircraft engine would be utilized by individuals such as pilot Maria Isabel Rodriguez-Van Heurck in the same or similar manner in which Maria Isabel Rodriguez-Van Heurck was using it at the time of the crash.

70. The aircraft engine was defective by design and/or manufacture, as demonstrated by its sudden loss of flying capability mid-flight. This defect rendered the aircraft engine unreasonably dangerous and therefore unfit for the ordinary purpose for which it is designed.

71. As such, Defendant StandardAero breached an express warranty and/or implied warranty of merchantability.

## COUNT XI- BREACH OF WARRANTY – ROLLS ROYCE

72. The engine manufactured by Rolls-Royce is subject to an express warranty and/or implied warranty of merchantability, under which any goods sold by Defendant must be fit for the ordinary purposes for which such goods are used.

73. Defendant Rolls-Royce expected that its aircraft engine would be utilized by individuals such as pilot Maria Isabel Rodriguez-Van Heurck in the same or similar manner in which Maria Isabel Rodriguez-Van Heurck was using it at the time of the crash.

74. The aircraft engine was defective by design and/or manufacture, as demonstrated by its sudden loss of flying capability mid-flight. This defect rendered the aircraft engine unreasonably dangerous and therefore unfit for the ordinary purpose for which it is designed.

75. As such, Defendant Rolls-Royce breached an express warranty and/or implied warranty of merchantability.

## COUNT XII- BREACH OF WARRANTY – JOHN DOE CORPORATIONS 1-5

76. The engine manufactured by Defendants John Doe Corporations 1-5 is subject to an express warranty and/or implied warranty of merchantability, under which any goods sold by Defendant must be fit for the ordinary purposes for which such goods are used.

77. Defendants John Doe 1-5 expected that its aircraft engine would be utilized by individuals such as pilot Maria Isabel Rodriguez-Van Heurck in the same or similar manner in which Maria Isabel Rodriguez-Van Heurck was using it at the time of the crash.

78. The aircraft engine was defective by design and/or manufacture, as demonstrated by its sudden loss of flying capability mid-flight. This defect rendered the aircraft engine unreasonably dangerous and therefore unfit for the ordinary purpose for which it is designed.

79. As such, Defendants John Doe 1-5breached an express warranty and/or implied warranty of merchantability.

## DAMAGES

80. As a direct and proximate result of the negligent acts and omissions of the Defendants Aviall, Airmotive, StandardAero, Rolls-Royce, and/or Defendants John Doe Corporations 1-5 as stated above, the Decedents were killed. Plaintiff Anthoy Yannone seeks compensation on behalf of all wrongful death beneficiaries from the Defendant for the wrongful death of the Decedents, which include, but are not limited to:

    a. Loss of a brother as to the Plaintiff;

    b. The full pecuniary value of the life of Neisha Zahn

    c. The full pecuniary value of the life of Daniel Yannone;

    d. The full pecuniary value of the life of Tyler Yannone;

    e. Lost support and services;

    f. Lost wages and earnings;

  g. Physical pain and suffering of the Decedents;

  h. Emotional pain and suffering of the Decedents;

  i. Funeral expenses;

  j. Loss of enjoyment of life of the Decedents;

  k. Pre-judgment interest;

  l. Post-judgment interest;

  m. Statutory and discretionary costs;

  n. Punitive damages;

  o. All such further relief, both general and specific, to which Plaintiff Tony Yannone may be entitled.

81. Pursuant to Texas R. Civ. P. 47, Plaintiff's damages include monetary relief over $1,000,000.

## INITIAL DISCLOSURE RESPONSES

82. Pursuant to TEX. R. CIV. P. 194, you are required to produce the disclosure responses listed therein within 30 days from the date you file your Answer.

## JURY TRIAL

83. Plaintiff demands a trial by jury and tenders the appropriate fee with this petition.

## RULE 193.7 NOTICE

84. Pursuant to TEX. R. CIV. P. 193.7, Plaintiff hereby gives notice that any and all document produced by any party to this cause in response to a written discovery request are self-authenticating and may be used at any pretrial proceeding or at the trial of this matter.

## PRAYER

  WHEREFORE PREMISES CONSIDERED, Plaintiffs prays that the Defendants be cited to appear and answer the above cause and that upon a trial of the case, Plaintiffs have judgment,

jointly and severally against the Defendants, for the above referenced damages.

Respectfully submitted,

*/s/ Michael Ely*

**MICHAEL ELY**
State Bar Number: 24091061
mike@evrfirm.com
**NICHOLAS REED**
State Bar No.: 24085546
nick@evrfirm.com

Ely, Valentine & Reed, PLLC
700 Market St., Ste. 202
Cedar Park, Texas 78613

Telephone: 512-562-7000
Facsimile: 512-562-8000
E-Service: service@evrfirm.com

**DOUGLAS P. DESJARDINS**
1717 N. St., NW
Washington, D.C. 20036
(202) 638-5300
Fax (202) 393-1725
dpd@pangialaw.com
