# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| NICOLAS G. VAN HEURCK, § <br> Individually and as Administrator of the § <br> Estate of Maria Rodriguez § <br> § <br> v. § <br> § <br> ROLLS-ROYCE CORPORATION, et § <br> al. § | CIVIL ACTION NO. 3:23-CV-0345-S <br> CIVIL ACTION NO. 3:23-CV-0357-S |

## **MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendant Rolls-Royce Corporation's Motion for Summary Judgment ("Motion") [ECF No. 72]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 73], Plaintiff Nicolas G. Van Heurck's Response in Opposition to the Motion ("Response") [ECF No. 112], Plaintiff's Brief in Support of the Response ("Plaintiff's Brief") [ECF No. 113], Defendant's Reply in Support of the Motion ("Reply") [ECF No. 134], the summary judgment evidence, and the applicable law. For the following reasons, the Court **DENIES** the Motion.

### I. BACKGROUND

This case arises out of a February 15, 2021, helicopter crash in the United States Virgin Islands, on the island of St. Thomas. App. in Supp. of Def. Rolls-Royce Corporation's Mot. for Summ. J. ("Defendant's Appendix") [ECF No. 74] Ex. E, at 74 ¶ 1, 79 ¶ 34. Decedents Daniel Yannone, Neisha Zahn, and Tyler Yannone (collectively, "Yannone Decedents") booked the helicopter ("Helicopter") for a sightseeing tour around St. Thomas. *Id.* at 79 ¶ 34. Decedent Maria Rodriguez (collectively with Yannone Decedents, "Decedents") was the Helicopter's pilot. *Id.* Rodriguez's company, Third-Party Defendant Caribbean Buzz Management, LLC, owned the

Helicopter. *Id.* at 77 ¶¶ 19, 21; *see also* Def.'s App., Ex. B., at 16 ¶ 6; App. of Pl. Anthony Yannone in Opp. to Mot. [ECF No. 111] Ex. 7, at 47.[1]

The flight booked by the Yannone Decedents was to be a 17-minute sightseeing tour around St. Thomas. Def.'s App., Ex. E, at 79 ¶ 34; *see also* Def.'s Br. 19. As the Helicopter was in flight, it lost engine power and crashed. Def.'s App., Ex. E, at 79 ¶ 38, 80 ¶¶ 42-44, 81 ¶ 51; Def.'s App., Ex. B, at 15. Decedents—who were all residents of the U.S. Virgin Islands at the time of their deaths—died from fatal injuries sustained in the crash.[2] Def.'s App., Ex. E, at 75 ¶ 4, 79 ¶ 35, 80 ¶ 46.

Plaintiff Nicolas G. Van Heurck is Rodriguez's surviving spouse and is a resident of the U.S. Virgin Islands. *Id.* at 75 ¶ 4. Plaintiff originally sued a number of defendants that allegedly "designed, manufactured, distributed, and/or serviced the engine component parts." *Id.* at 85 ¶ 82. Plaintiff alleges that the Helicopter engine's stage 2-3 compressor wheel ("Compressor Wheel") was defective.[3] Pl.'s Br. 7. Specifically, Plaintiff contends that the Helicopter's engine failure was caused by a failure of a compressor blade on the Compressor Wheel due to a fatigue crack. *See* Def.'s App., Ex. B, at 16 ¶ 1; Pl.'s Br. 7.

Defendant Rolls-Royce Corporation, the only remaining defendant, is a Delaware corporation with its principal place of business in Indiana. Def.'s App., Ex. E, at 75 ¶ 5; App. to

---

[1] There appears to be some dispute regarding whether Caribbean Buzz, LLC, or Caribbean Buzz Management, LLC, owned the Helicopter. *See* Pl.'s Br. 2 (arguing that the helicopter was owned by Caribbean Buzz, LLC). Because only former party Anthony Yannone submitted evidence on this point, the Court cites it here. The Court has not otherwise considered Yannone's briefing or argument in reaching its conclusion.

[2] Later, Rodriguez's estate was administered in the U.S. Virgin Islands. *See* App. in Supp. of Pl. Nicolas G. Van Heurck's Resp. in Opp'n to Rolls-Royce Corporation's Mot. for Summ. J. ("Plaintiff's Appendix") [ECF No. 114] Ex. D, at 58.

[3] Helicopter engines generate power by pulling air through a compressor into the engine. The compressor wheels compress the air as it passes through the engine, and "pressure increases at each stage as the air is squeezed." Def.'s App., Ex. E, at 78 ¶¶ 27-28.

Rolls-Royce Corporation's Reply in Supp. of Its Mot. for Summ. J. ("Reply App.") [ECF No. 135] Ex.1, at 2 ¶ 2. Defendant manufactured and sold the Compressor Wheel in 2006 in Indiana. Def.'s App., Ex. D, at 65 ¶ 5. Defendant's predecessor designed the Compressor Wheel. *Id.* One of Defendant's vendors, Third-Party Defendant Bescast Inc., cast the Compressor Wheel in Ohio. *Id.* ¶ 6; *see also* Pl.'s App., Ex. C, at 55; Pl.'s Br. 7. After casting, it was returned to Defendant in Indiana. Def.'s App., Ex. D, at 65 ¶ 6. In Indiana, Defendant further shaped the Compressor Wheel so that it matched the exact dimensions specified in the technical drawing and performed the final finish and inspection. *Id.* Defendant sold the Compressor Wheel to a Texas distributor in December 2006. *Id.*; Def.'s App., Ex. D-1, at 67-70. Thereafter, Dallas Airmotive installed it into the engine of the Helicopter on January 18, 2009. Def.'s App., Ex. D-2, at 72.

Plaintiff brought suit against Defendant, asserting causes of action for wrongful death, negligence, strict product liability (manufacturing/design defect), breach of warranty, loss of consortium, and pre-impact terror. Def.'s App., Ex. E, at 81-88 ¶¶ 57-103. Defendant moves for summary judgment on all of Plaintiff's claims.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

Defendant moves for summary judgment on all of Plaintiff's claims, arguing that under conflicts of law principles the Court must apply Indiana law regarding the applicable statute of

4

repose[4] and that Plaintiff's claims are barred by the ten-year statute of repose for product liability actions[5] under Indiana law. Def.'s Br. 1-2.

"[T]he applicable substantive law is determined by . . . choice-of-law principles, but the procedural rules are the rules of the forum." *Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 838 (N.D. Tex. 2012) (citing *Condit Chem. & Grain Co. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102 (5th Cir. 1986)). Statutes of repose are considered substantive under Texas law. *Galbraith*, 290 S.W.3d at 866. Accordingly, the Court must conduct a choice-of-law analysis.

### A. Restatement (Second) of Conflict of Laws

Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Texas has adopted Section 6 of the Restatement (Second) of Conflict of Laws ("Restatement") to ascertain the governing authority. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003); *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citation omitted). Section 6 "provides two sequential analyses"—Sections 6(1) and 6(2)—"the second of which is conditioned on the inapplicability of the first." *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 116 (Tex. App.—Dallas 2020, no pet.) (citation omitted).

Pursuant to Section 6(1), a court must "follow a statutory directive of its own state on choice of law." RESTATEMENT § 6(1) (A.L.I. 1971). Under Section 6(2), if there is no statutory

---

[4] Statutes of repose "provide a definitive date beyond which an action cannot be filed." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009) (citation omitted). "Unlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action." *Trinity River Auth. v. URS Consultants, Inc.—Tex.*, 889 S.W.2d 259, 261 (Tex. 1994).

[5] According to Defendant, all of Plaintiff's claims are subject to the ten-year statute of repose for product liability actions. *See* Def.'s Br. 1-2. Because Plaintiff does not argue otherwise, and because the Court ultimately concludes that the statute of repose is inapplicable in this case, the Court assumes, without deciding, that Defendant is correct.

directive, and if the laws of the interested jurisdictions conflict, courts proceed to apply the "most significant relationship" test. *Stevenson*, 608 S.W.3d at 117 (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 443 (Tex. 2007)). Under this test, "a single state's law need not govern all substantive issues; thus, each issue is considered separately, and the state law that has the most significant relationship to the issue is applied." *Sulak*, 901 F. Supp. 2d at 838 (citation omitted). The party asserting a conflict of law has the burden to show that a foreign state's law applies. *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 69-70 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citation omitted).

### B. Texas Civil Practice and Remedies Code

In cases involving the death or personal injury of a person where the death or injury occurred in a foreign state, such as this case, the Texas Legislature has provided a statutory directive on choice of law; namely, Section 71.031 of the Texas Civil Practice and Remedies Code. *Burdett v. Remington Arms Co.*, 854 F.3d 733, 735-36 (5th Cir. 2017) (citation omitted). Section 71.031 contains two relevant analyses. First, subsection (a) sets forth requirements that must be met by a plaintiff suing for "damages for . . . death or personal injury" where, as here, "the wrongful act, neglect, or default causing the death or injury [took] place in a foreign state or country." TEX. CIV. PRAC. & REM. CODE § 71.031(a). Second, subsection (c) instructs courts to "apply the rules of substantive law that are appropriate under the facts of the case."[6] *Id.* § 71.031(c).

#### i. Section 71.031(a)

The parties did not brief Section 71.031(a). As a result, the Court cannot analyze this "statutory requirement" at this time. *Stevenson*, 608 S.W.3d at 120 (citing *Dubai Petroleum Co. v.*

---

[6] Section 71.031(b) instructs courts to apply the procedural laws of Texas. TEX. CIV. PRAC. & REM. CODE § 71.031(b).

6

*Kazi*, 12 S.W.3d 71, 76-77 (Tex. 2000)). By separate order, the Court will order supplemental briefing on this issue. However, for the sake of ruling on the Motion that was presented to the Court, the Court will assume, without deciding, that Section 71.031(a) does not bar Plaintiff's claims.

*ii. Section 71.031(c)*

If the requirements of Section 71.031(a) are satisfied, Section 71.031(c) then requires courts to apply the appropriate rules of substantive law. TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(c). In Texas, the most significant relationship test determines which state's substantive laws are appropriate under Section 71.031(c). *See Total Oilfield Servs., Inc. v. Garcia*, 711 S.W.2d 237, 238-39 (Tex. 1986); *Stevenson*, 608 S.W.3d at 122 (citation omitted).

*a. Actual Conflict Among Interested Jurisdictions*

Before performing the most significant relationship analysis, the Court must resolve two preliminary questions. First, the Court must determine which states' laws potentially govern this lawsuit. The parties agree that Texas, Indiana, and the U.S. Virgin Islands are interested jurisdictions. Def.'s Br. 6; Pl.'s Br. 4-5. Texas is the forum for this lawsuit. The Compressor Wheel was manufactured, at least in part, in Indiana, Defendant put the Compressor Wheel into the stream of commerce in Indiana, and Defendant is domiciled in Indiana. The Helicopter crashed in the U.S. Virgin Islands, where Plaintiff resides and where Decedents resided at the time of the crash.

Second, the Court must determine if the laws of the jurisdictions identified above are in conflict. *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013) (citation omitted). Only if an actual conflict exists should the Court proceed with assessing which state's substantive law applies. *Id.* ("If the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice-of-law question." (citation omitted)).

In this case, the Court concludes that Indiana law conflicts with Texas and U.S. Virgin Islands law with regard to statutes of repose for product liability actions. In Indiana, "a product liability action must be commenced . . . within ten (10) years after the delivery of the product to the initial user or consumer." IND. CODE § 34-20-3-1(b)(2). The U.S. Virgin Islands does not have a statute of repose for product liability cases. *See* Def.'s Br. 6; Pl.'s Br. 13.

The Texas statute of repose is more complicated. In general, the statute of repose for Texas product liability actions is 15 years after the date of the sale of the product. TEX. CIV. PRAC. & REM. CODE § 16.012(b). However, this provision "does not apply to any claim to which the General Aviation Revitalization Act of 1994 [("GARA")] (Pub. L. No. 103-298, 108 Stat. 1552 (1994), reprinted in note, 49 U.S.C. [§] 40101) or its exceptions are applicable." *Id.* § 16.012(g). "GARA is a statute of repose which prohibits lawsuits against aircraft manufacturers arising out of accidents involving any general aviation aircraft or component part . . . ." *Bain ex rel. Bain v. Honeywell Int'l, Inc.*, 167 F. Supp. 2d 932, 936 (E.D. Tex. 2001) (citation omitted). The statute of repose set forth in GARA is 18 years, and it runs from the date the component that caused the injury was added to the aircraft. *Id.* (citation omitted); 49 U.S.C. § 40101 note §§ (2)(a)(2), 3(3).

Therefore, the Court must determine whether GARA applies in this case. GARA governs cases involving "general aviation aircraft." 49 U.S.C. § 40101 note § 2(a). "[G]eneral aviation aircraft" is defined as "any aircraft for which a type certificate or an airworthiness certificate has been issued" that "had a maximum seating capacity of fewer than 20 passengers" and was not "engaged in scheduled passenger-carrying operations." *Id.* § 2(c). Defendant does not dispute that the Helicopter was a general aviation aircraft, and the Court agrees. *See* Def.'s Br. 6 n.17; *see also, e.g.*, Def.'s App., Ex. E, at 79 ¶ 34 (stating that Rodriguez was operating the Helicopter "for the purpose of taking a family of three . . . on a seventeen-minute sightseeing tour," as opposed to

8

scheduled passenger-carrying operations); Def.'s App., Ex. J, at 121 (detailing sightseeing tours offered by Rodriguez's company). As such, the Court concludes that, under Texas law, GARA's 18-year statute of repose would apply to this case.

Here, Defendant delivered the Compressor Wheel to the initial user on January 18, 2009—approximately 14 years before Plaintiff filed suit. *See* Def.'s Br. 7 (citing Def.'s App., Ex. D-2, at 72). This is the same date it was added to the aircraft. *See id.* Thus, Plaintiff's claim would be barred under Indiana's ten-year statute of repose. But Plaintiff's claim would not be barred by U.S. Virgin Islands law, which has no statute of repose, or by Texas law, which, in this case, incorporates GARA's 18-year statute of repose. There is an actual conflict between Indiana law on the one hand and U.S. Virgin Islands and Texas law on the other, so the Court must proceed with a substantive choice-of-law analysis.

### b. Most Significant Relationship

The most significant relationship test involves three levels of analysis in wrongful death lawsuits. *Stevenson*, 608 S.W.3d at 118 (citation omitted). The first level "is provided in [Section] 6(2) [of the Restatement] and involves the general test of weighing the competing policy interests of the different jurisdictions. *Id.* (citation omitted). At the second level, courts look to the substantive law concerning a specific area. *Id.* (citation omitted). And the third level "provides guiding principles for a specific context within the area of substantive law." *Id.* (citation omitted).

### 1. Section 6(2) of the Restatement

At the first level, the Court considers the general choice-of-law principles enumerated in Section 6(2) of the Restatement. *Id.* (citation omitted). The Section 6(2) factors are: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of

9

the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Spence v. Glock, Ges.m.b.H*, 227 F.3d 308, 311-12 (5th Cir. 2000) (quoting RESTATEMENT § 6(2)). In tort cases, the needs of the interstate system, the relevant policies of the forum, the relevant policies of other interested states, and the ease in the determination and application of the law to be applied are given greater import than the remaining factors, which are of "relative insignificance." RESTATEMENT § 145 cmt. b.

Choice-of-law rules "should seek to further harmonious relations between states and to facilitate commercial intercourse between them." RESTATEMENT § 6 cmt. d. While Defendant argues that "[a]pplying the products liability law of the state of manufacture promotes the free flow of commerce across state . . . boundaries," Def.'s Br. 15, Defendant has provided no evidence supporting its assertion. Further, it is unlikely that the choice-of-law analysis in this case will have a substantial impact on commercial intercourse between Indiana and the U.S. Virgin Islands. *See, e.g., Baird v. Bell Helicopter Textron*, 491 F. Supp. 1129, 1144 (N.D. Tex. 1980) ("[T]he analysis on this point is inconclusive and no effect on international good will or trade relations can be determined to a sufficient degree of certainty to indicate which jurisdiction's law should apply."). Therefore, this factor is neutral.

Turning to the relevant policies of the forum, the Court concludes that Texas has minimal policy interests in this action. The Compressor Wheel was not manufactured in Texas, the accident did not occur in Texas, and none of the parties are Texas citizens. Therefore, Texas's only relevant policy interests are those involving trial administration. *See* RESTATEMENT § 6 cmt. e ("[W]here the state of the forum has no interest in the case apart from the fact that it is the place of the trial .

. . the only relevant policies of the state of the forum will be embodied in its rules relating to trial administration[.]").

As to the relevant policies of other interested states, Indiana and the U.S. Virgin Islands have competing interests here. Indiana has established a ten-year statute of repose for products liability, indicating its interest in protecting domestic manufacturers from "the potential for unknown liability." *McIntosh v. Melroe Co., a Div. of Clark Equip. Co.*, 729 N.E.2d 972, 980 (Ind. 2000) (citation omitted). However, the U.S. Virgin Islands "has a clear interest in protecting its residents from defective products." *Lewis v. Conagra Brands, Inc.*, 77 V.I. 330, 367 (V.I. Super. Ct. 2023); *see also Tutein v. Fiat Chrysler Autos., US LLC*, 73 V.I. 306, 321 (V.I. Super. Ct. 2020) ("[T]he Virgin Islands has a significant interest in redressing harms committed against its citizens by out-of-state companies." (alteration in original) (quoting *Gov't of U.S. Virgin Islands v. Takata Corp.*, 67 V.I. 316, 363 (V.I. Super. Ct. 2017))). Because both Indiana and the U.S. Virgin Islands have compelling interests, this factor is neutral.

Finally, the Court can apply Texas, Indiana, or U.S. Virgin Islands law with equal ease. Therefore, this factor is neutral.

Defendant bears the burden of establishing that Indiana law applies. And here, at the first level of the most significant relationship analysis, it has not demonstrated that the Section 6(2) factors that have "greater importance," RESTATEMENT § 145 cmt. b, favor applying Indiana law to this dispute. At most, the factors are neutral. And though Defendant also argues in favor of applying the remaining factors, Def.'s Br. 12, 16-17, Defendant did not carry its burden to show that these other relatively insignificant factors affect the Court's conclusion.

### *2. Specific Substantive Law*

At the second level of the test, Section 145 of the Restatement "provides a more specific rule applicable to tort cases," *Stevenson*, 608 S.W.3d at 118 (citing, among other sources, RESTATEMENT § 145), and thus is used to determine which state has the "most significant relationship to the occurrence and the parties," *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979) (quoting RESTATEMENT § 145(1)). Section 145 sets forth four factors for courts to consider: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. RESTATEMENT § 145(2). Courts evaluate these contacts according to their relative importance with respect to the particular issue. *Spence*, 227 F.3d at 312 (citation omitted). The quality of the Section 145 contacts is more important than the number of contacts favoring the application of one state's law or another. *Gutierrez*, 583 S.W.2d at 319.

### *(i) Place of Injury*

The first factor, the place where the injury occurred, weighs in favor of applying U.S. Virgin Islands law. The parties agree that the place of injury is the U.S. Virgin Islands. *See* Def.'s Br. 20; Pl.'s Br. 5. However, Defendant argues that the place of injury was fortuitous and thus not entitled to much weight because "the place of injury is often fortuitous in aeronautical crashes" and "the failure of the Product could have occurred over any one of several islands." Def.'s Br. 17-19 (citations omitted). "Fortuitous" means "[o]ccurring by chance; accidental." *Fortuitous*, BLACK'S LAW DICTIONARY (12th ed. 2024). In cases involving air travel over multiple jurisdictions, courts generally find the place of injury to be fortuitous and thus less compelling as a factor. *See, e.g., Schippers v. Mazak Props., Inc.*, 350 S.W.3d 294, 300 (Tex. App.—San Antonio

2011, pet. denied) (concluding that the place of injury was fortuitous where "the plane could have crashed anywhere between Texas and Florida").

Here, by contrast, the U.S. Virgin Islands was not a chance location for the crash. The flight at issue was not scheduled to travel beyond the borders of the U.S. Virgin Islands. *See* Def.'s Br. 19 (acknowledging that the flight "was scheduled to remain within St. Thomas"); Def.'s App., Ex. E, at 79 ¶ 34 (describing the flight as "a seventeen-minute sightseeing tour around St. Thomas"). "This case, therefore, is unlike those cases involving . . . air travel extending over several states where the accident occurs in some state other than the state of origin or the state of destination." *Price v. Litton Sys., Inc.*, 784 F.2d 600, 605 (5th Cir. 1986) (determining that Alabama was not a fortuitous crash location where "the fatal flight was not scheduled to travel beyond the borders of that state"); *see also Yelton v. PHI, Inc.*, 669 F.3d 577, 584 (5th Cir. 2012) (affirming district court's application of Louisiana law in helicopter crash case where, among other things, "[p]assengers boarded in Louisiana, Louisiana was the only state over which the helicopter flew, and Louisiana was the only state in the intended flight path" (citation omitted)); *Feltham v. Bell Helicopter Textron, Inc.*, 41 S.W.3d 384, 390 (Tex. App.—Fort Worth 2001, no pet.) (finding the place of injury not fortuitous where the flight at issue was not "destined to leave Canada").

Further, the U.S. Virgin Islands has multiple connections to the case outside of merely being the crash site. Decedents were residents of the U.S. Virgin Islands. Rodriguez lived and worked in the U.S. Virgin Islands, and Plaintiff resides in the U.S. Virgin Islands. The U.S. Virgin Islands has a significant relationship to the crash. *See, e.g., Sulak*, 901 F. Supp. 2d at 843-44 (concluding that the place of injury factor remained relevant in an air crash case because "the plane was operated and maintained in Hawaii and because [the pilot] lived and worked in Hawaii" (citation omitted)); *Denman ex rel. Denman v. Snapper Div.*, 131 F.3d 546, 549 (5th Cir. 1998)

13

(holding that the location of an automobile accident should not be "discounted as merely fortuitous" where the decedent "was not passing through North Carolina, but actually resided there at the time of the injury" (citation omitted)).

*(ii) Place Where Conduct Causing the Injury Occurred*

The second factor, the place where the conduct causing the injury occurred, weighs in favor of applying Indiana law. Plaintiff asserts that the Compressor Wheel failed because of a manufacturing defect introduced during the casting process.[7] Pl.'s Br. 7. Regarding a manufacturing defect, the place of manufacture is generally considered the place where the conduct causing the injury occurred. *See In re Air Disaster at Ramstein Air Base, Ger., on 8/29/90*, 81 F.3d 570, 577 (5th Cir. 1996); *Sulak*, 901 F.Supp.2d at 844 (holding that France was the place of the conduct causing the injury for a design or manufacturing defect where the helicopter at issue was designed and manufactured in France (citation omitted)). Courts also consider where the product entered the stream of commerce. *See Crisman v. Cooper Indus.*, 748 S.W.2d 273, 277 (Tex. App.—Dallas 1988, writ denied) (citing *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex. 1978)).

Here, all of Defendant's contacts with the Compressor Wheel occurred in Indiana. Although the Compressor Wheel was cast in Ohio by Defendant's vendor,[8] Pl.'s App., Ex. C, at 55, Defendant machined, finished, inspected, and placed the Compressor Wheel into the stream of commerce in Indiana, Def.'s App., Ex. D, at 65 ¶ 6; *see also* Def.'s Br. 10. If a manufacturing

---

[7] Although Plaintiff originally asserted design defect and failure to warn theories, Plaintiff now appears to be pursuing only a manufacturing defect theory. *See* Pl.'s Br. 7 ("Plaintiff's position is that the blade failed due to a manufacturing defect that occurred during the casting process.").

[8] In addition, the evidence indicates that a vendor applied a coating to the Compressor Wheel in an unspecified location outside of Indiana. Def.'s App., Ex. D, at 65 ¶ 6 ("The Product was then sent to another vendor for application of a[] [corrosion] coating before it was ultimately returned to [Defendant] in Indiana for final finish and inspection.").

defect was introduced during the casting process, as Plaintiff alleges, then the place where Defendant's conduct caused an injury is Indiana. Therefore, this factor weighs in favor of applying Indiana law.

### *(iii) Domicile of the Parties*

The third factor, location of the parties, points to Delaware, Indiana, and U.S. Virgin Islands law. According to Defendant, Plaintiff and Rodriguez were, at the time of removal, "residents and ***domiciles*** of [the] U.S. Virgin Islands." Notice of Removal ¶ 5, *Van Heurck v. Rolls-Royce Corp.*, No. 3:23-CV-0357 (N.D. Tex. Feb. 16, 2023), Dkt. No. 1 (emphasis added). Plaintiff, however, alleges only that he and Rodriguez were residents of the U.S. Virgin Islands. Def.'s App., Ex. E, at 75 ¶ 4. Regardless, "a party's residence is a contact to be taken into account in choice-of-law decisions." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000) (citation omitted). Defendant is a Delaware corporation with its principal place of business in Indiana. Notice of Removal ¶ 5; Reply App., Ex. 1, at 2 ¶ 2; Pl.'s Br. 9. This factor supports applying either Indiana or U.S. Virgin Islands law.

### *(iv) Location of the Relationship Between the Parties*

The fourth factor, the location of the relationship between the parties, is either neutral or also weighs in favor of U.S. Virgin Islands law. Some courts have concluded that where the relationship between the parties only existed in one place, that location is the center of the parties' relationship. *See, e.g., Price*, 784 F.2d at 604 (concluding that the fourth factor weighed in favor of Alabama law in an air crash case where Alabama was "the only location where the decedents came in contact with the products of the defendant"). Under that approach, the U.S. Virgin Islands is the only place where the relationship between the parties to this lawsuit existed. Other courts have determined that the factor is not relevant where, as here, the parties had no preexisting

relationship. *Denman*, 131 F.3d at 549-50 (determining that the fourth factor was duplicative of the first because the parties did not have a prior relationship (citation omitted)); *Bain v. Honeywell Int'l, Inc.*, 257 F. Supp. 2d 872, 877 (E.D. Tex. 2002) (finding that the fourth factor did not apply where "there was no direct relationship [between the parties] prior to the accident" (citing *Crisman*, 748 S.W.2d at 278). Regardless of whether the Court discounts this factor or weighs it in favor of U.S. Virgin Islands law, however, it does not provide support for Defendant's argument that Indiana law governs.

### 3. Context-Specific Guiding Principles

Finally, Section 175 of the Restatement "provide[s] more specific context" for "wrongful-death actions." *Stevenson*, 608 S.W.3d at 118 (citing, among other sources, RESTATEMENT § 175 cmt. c). Pursuant to Section 175, in a wrongful death case, "the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in [Section] 6 to the occurrence and the parties." RESTATEMENT § 175. In this case, the Court has applied the principles stated in Section 6, and no state has a more significant relationship to the occurrence and the parties than the U.S. Virgin Islands, which is the place where the injury occurred. Accordingly, the third level of the analysis further supports applying U.S. Virgin Islands law.

\* \* \*

All three levels of the most significant relationship test indicate that the U.S. Virgin Islands is the state with the most significant relationship to the issue of the statute of repose. As such, Defendant has not met its burden to show that Indiana law applies. Assuming the requirements of

Section 71.031(a) of the Texas Civil Practice & Remedies Code are satisfied, the Indiana statute of repose does not bar this action.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Rolls-Royce Corporation's Motion for Summary Judgment [ECF No. 72].

**SO ORDERED.**

SIGNED October 6, 2025.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**